NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-868

JACOBO MATTHEWS[1]

vs.

COMMONWEALTH EMPLOYMENT RELATIONS BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Jacobo Matthews seeks review of a decision of the

Commonwealth Employment Relations Board (CERB) affirming a

Department of Labor Relations (DLR) investigator's decision to

dismiss, for lack of probable cause, Matthews's prohibited

practice charge against the Commonwealth's Department of

Transitional Assistance (employer). Matthews argues that CERB's

decision was legally erroneous and unsupported by substantial

evidence. We vacate that decision in part and remand the case

to CERB for further consideration. We otherwise affirm CERB's

decision and also affirm a single justice's orders denying

_____

[1] Matthews's first name is variously spelled "Jacobo" or "Jacob" in the record. Consistent with our practice, we spell the name as it appears on the prohibited practice charge.

Matthews's motions for sanctions against opposing counsel and for reconsideration.

Background. We recite the relevant procedural history and facts as set forth in CERB's decision, reserving certain details for later discussion. Matthews was hired by the employer on April 23, 2023, subject to a nine-month probationary period during which his employment could be terminated without cause. In August 2023, Matthews complained to his supervisors and several coworkers that a security officer had yelled at him. Months later, in November or December, Matthews complained to his supervisors about a different coworker who he said was harassing him and creating a hostile work environment. He complained about the same coworker (and another coworker) on December 20, 2023, for similar reasons.

Also on December 20, 2023, one of Matthews's supervisors spoke to the latter two coworkers, who were women. They each reported that Matthews had made inappropriate comments and had begun acting rudely after they rejected his separately asking them on dates. The next day, December 21, the supervisor placed Matthews on paid administrative leave, citing "concerns," but not informing Matthews of his coworkers' allegations.

The employer was subject to a collective bargaining agreement, and Matthews was a member of the bargaining unit. After being placed on leave, he contacted his union for

2

assistance.  The union and the employer were in contact about Matthews's having been placed on paid administrative leave, but, despite its request, the union was not informed of the allegations that prompted the leave.

On January 4, 2024, the employer held an investigative interview to ascertain further information about the allegations against Matthews.  Matthews attended the interview with two union representatives also present on his behalf.  At the interview, Matthews and the union learned for the first time the nature of the allegations that had led to Matthews's being placed on leave.

Neither union representative asked Matthews any questions during the interview.  At the conclusion of the interview, the employer found the allegations credible.  By letter dated January 9, 2024, the employer terminated Matthews's employment based on his having "engaged in inappropriate behavior" rendering him "unable to perform [his] job functions."

Matthews filed a charge of prohibited practice with DLR, alleging that the employer had violated his rights under National Labor Relations Bd. v. J. Weingarten, Inc., 420 U.S. 251, 252 (1975) (Weingarten), and thus under G. L. c. 150E, § 10 (a) (1).  Matthews later filed an amended charge alleging that the employer had retaliated against him for engaging in protected concerted activity, in violation of G. L. c. 150E,

3

§ 10 (a) (3).  After investigation, a DLR investigator dismissed the charge for lack of probable cause.  Matthews appealed from the dismissal to CERB, which affirmed it.[2]  Matthews then filed this action for judicial review.[3]

Discussion.  "We review the board's decision in accordance with the standards set forth in G. L. c. 30A, § 14 (7), governing appeals from final administrative agency decisions." Somerville v. Commonwealth Employment Relations Bd., 470 Mass. 563, 567-568 (2015), citing G. L. c. 150E, § 11 (i).  A decision by CERB "will be set aside if . . . it is '[u]nsupported by substantial evidence,' . . . or '[a]rbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.'" Commissioner of Admin. & Fin. v. Commonwealth Employment Relations Bd., 477 Mass. 92, 95 (2017), quoting G. L. c. 30A, § 14 (7) (e), (g).

1.  Deprivation of Weingarten rights.  Massachusetts follows the principle that an employee, upon request, has a

---

[2] CERB subsequently denied Matthews's request to reconsider.

[3] CERB's decision recognized that other remedies were available that might afford Matthews some relief.  The union had filed two separate grievances on Matthews's behalf; one concerned his termination and the other concerned the employer's asserted failure to investigate his discrimination complaints. The employer denied both grievances, the union requested arbitration, and those requests were pending at the time the DLR investigator dismissed Matthews's c. 150E complaint.  In addition, Matthews had filed G. L. c. 151B claims against the employer at the Massachusetts Commission Against Discrimination.

4

right to have a "union representative . . . present at an investigatory interview which the employee reasonably believed might result in disciplinary action." Weingarten, 420 U.S. at 252. See Massachusetts Correction Officers Federated Union v. Labor Relations Comm'n, 424 Mass. 191, 193 (1997) (MCOFU). An employer's deprivation of an employee's Weingarten rights restrains the employee's right under G. L. c. 150E, § 2, "to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection," and thus violates G. L. c. 150E, § 10 (a) (1). See MCOFU, supra at 193-194.

All parties agree that Matthews was entitled to union representation at his investigative interview, that he asked for such representation, and that he had two union representatives present on his behalf. Matthews argues, however, that because neither he nor the union representatives were informed in advance of the specific allegations against him, the union was functionally silenced, and his right under Weingarten to union representation was rendered meaningless. He therefore argues that CERB erred in finding no evidence of a Weingarten violation.

To the extent that Matthews argues that he individually (as opposed to the union representatives) had a right to know the subject matter of the interview prior to its occurrence, he

5

cites no authority to support this position.  He has offered us no basis to rule that CERB erred on this point.[4]

The question regarding what information the employer provided to the union is another matter.  CERB's decision acknowledged that it has previously viewed an employer's "fail[ure] to provide the union with information that is relevant and reasonably necessary to its duties of representation, including information about disciplinary allegations against a bargaining unit member," as a violation of G. L. c. 150E, § 10 (a) (5).  Here, although a union representative initially asked for an explanation of why Matthews had been placed on leave, and the employer did not immediately furnish one, nowhere in the union's subsequent communications with the employer did the union assert that the employer's response was inadequate or that the union still needed the information before the hearing.  On this basis, CERB concluded that the evidence did not rise to the level of a "fail[ure] to respond to the [u]nion."  CERB added in a footnote that if the union had wanted to press the issue, it could have filed a prohibited practice charge under § 10 (a) (5), but that

---

[4] Matthews's reply brief makes the further argument that his Weingarten rights were violated because he did not caucus with the union during the interview.  But he cites no evidence that he or the union sought to engage in such a caucus, let alone that they were prevented from doing so.

6

it did not do so, and that an individual employee such as Matthews lacks standing to file a § 10 (a) (5) charge.

CERB did not explain, however, why Matthews could not pursue this claim under § 10 (a) (1). As CERB's decision here acknowledged, it has previously recognized the denial of Weingarten rights as a violation of § 10 (a) (1). So have the reviewing courts. See MCOFU, 424 Mass. at 193-194. Matthews's prohibited practice charge alleged that the employer had violated his Weingarten rights and § 10 (a) (1) by, among other things, failing to inform the union of the subject of the investigatory interview in advance of that interview.

Weingarten rights are aimed at least in part at allowing the union to "assist the employer by eliciting favorable facts, and save the employer production time by getting to the bottom of the incident occasioning the interview." MCOFU, 424 Mass. at 193, quoting Weingarten, 420 U.S. at 263. A union representative is present at an investigatory interview "to assist the employee, and may attempt to clarify the facts or suggest other employees who may have knowledge of them" (citation omitted). Weingarten, supra at 260. We do not currently see how a union representative can perform these functions on behalf of the employee if the representative, despite asking beforehand, is kept in the dark about the allegations underlying the interview. Nor is it obvious why the

7

employer need not respond to a union's request for such information until the union has repeated that request several times.

In sum, CERB did not explain why an employer's lack of response to such a request by a union is not a violation of § 10 (a) (1) that may be pursued by an individual employee, as Matthews sought to do here. Although we owe deference to CERB's specialized knowledge and expertise in the field of public employee labor relations, see Commonwealth v. Commonwealth Employment Relations Bd., 101 Mass. App. Ct. 616, 623 (2022), CERB has not directly addressed Matthews's argument. A remand is therefore necessary, for CERB to reconsider whether there was probable cause that Matthews's Weingarten rights were violated.

2. Retaliation for engaging in concerted activity. Matthews separately contends that CERB's decision affirming the investigator's dismissal of the retaliation charge "ignore[ed] overwhelming prima facie evidence." To make out a prima facie case under G. L. c. 150E, § 10 (a) (3), Matthews must "produce evidence to support the conclusion that (1) [he] engaged in concerted activity as defined by G. L. c. 150E, § 2; (2) the employer knew of this activity; (3) the employer took adverse action against [him]; and (4) the adverse action was motivated by the employer's desire to penalize or discourage the protected

8

activity" (citation omitted).  <u>Fowler</u> v. <u>Labor Relations Comm'n</u>, 56 Mass. App. Ct. 96, 97-98 (2002).

Matthews identifies two different categories of assertedly protected concerted activities that he claims led to retaliation.  We first address his claim that the employer retaliated against him for seeking the union's assistance after he was placed on leave on December 21, 2023.  As to this claim, both the DLR investigator and CERB concluded that there was evidence of the first three elements of the prima facie case, but not the fourth.  That is, although (1) seeking the union's assistance was protected concerted activity, (2) of which the employer became aware, and (3) the employer's termination of Matthews constituted adverse action, (4) there was no probable cause to believe that the termination was motivated by the employer's desire to penalize or discourage the protected activity.

On appeal, Matthews does not argue that there is any evidence of a direct causal link between his request for union assistance alone and his being fired.[5]  Rather, he points to the

_____

[5] CERB did not err in declining to consider, as additional evidence of retaliatory motive, Matthews's account of an April 21, 2025 chance encounter with one of the employer's supervisory employees in a retail store.  The reported incident occurred more than fifteen months after the employer terminated Matthews, and more than six months after the DLR investigator dismissed Matthews's prohibited practice charges for lack of probable cause.  CERB correctly ruled that its review of the dismissal

9

second (albeit chronologically earlier) category of assertedly protected activity: his complaints to the employer in August, November, and December of 2023 about mistreatment or harassment by the security guard and two female coworkers. Matthews claims that these complaints prompted the employer to retaliate against him by placing him on leave, and that his subsequent request for union assistance caused the employer to "compound[] its retaliation."

CERB, however, relying on decades of its precedents including Town of Southborough, 21 M.L.C. 1242, 1249 (1994), concluded that Matthews's earlier complaints were not protected concerted activity, because they did not "focus[] on generally applicable terms and conditions of employment that impact the collective bargaining unit as a whole." CERB saw no evidence that Matthews was "acting with other employees, or on the authority of other employees, rather than acting out of self-interest," or "had contacted the [u]nion regarding the complaints."

Although Matthews contests CERB's conclusion that his earlier complaints were not protected concerted activity, he cites no evidence in the record that undermines that conclusion.

---

order was based on the record available to the DLR investigator, not based on incidents postdating that investigation. See G. L. c. 150E, § 11 (b), (e).

He points to no evidence showing the content of those complaints, any discussions he had about them with other employees or the union, or how they related to any concerns of other bargaining unit members. He cites almost exclusively to his own unsworn assertions in documents filed with DLR and CERB. The one exception -- one of his prohibited practice charges, which he signed under the penalties of perjury -- does not include any description or discussion of his original complaints. Thus Matthews has not shown that CERB's view of the complaints as not constituting concerted activity lacked substantial evidentiary support. Accordingly, CERB did not err in ruling that any adverse action the employer took against Matthews based on his complaints did not show probable cause of retaliation under G. L. c. 150E, § 10 (a) (3).

3. Due process. Matthews next argues that the employer violated his procedural due process rights by terminating him for alleged inappropriate behavior without affording him a name-clearing hearing. See Fontana v. Commissioner of the Metro. Dist. Comm'n, 34 Mass. App. Ct. 63, 67 (1993). Matthews fails to explain how CERB has authority to adjudicate such a claim, which does not arise under G. L. c. 150E. Even if CERB had such authority, this claim was never made to CERB and is therefore waived. "A party is not entitled to raise arguments on appeal that he could have raised, but did not raise, before the

11

administrative agency."  Albert v. Municipal Court of Boston, 388 Mass. 491, 493 (1983).[6]

4.  Motion for sanctions.  While this appeal was pending, Matthews moved for sanctions against CERB's counsel after counsel failed to timely serve CERB's brief on Matthews as required by the appellate rules.  Counsel asserted that she had made a mistake in Matthews's e-mail address, promptly sent him a copy of the brief, and informed this court that CERB did not oppose enlarging the time for Matthews to file his reply brief. A single justice denied Matthews's motion for sanctions and his subsequent motion for reconsideration.  Matthews appealed, and that appeal was consolidated with his appeal from CERB's decision.

"It is well settled that this court will not reverse an order of a single justice in the absence of an abuse of discretion or clear error of law" (citation omitted).  Howard v. Boston Water & Sewer Comm'n, 96 Mass. App. Ct. 119, 123 (2019). We see no such abuse or error here.  The single justice exercised discretion to provide appropriate relief from counsel's error, in the form of an extension of time for

_____

[6] We pass over Matthews's failure to offer any evidence to support other elements of his claim, such as that the allegedly false and stigmatizing charges against him were "disseminated to the public or are likely to be communicated to prospective employers."  Fontana, 34 Mass. App. Ct. at 67.

12

Matthews to file a reply brief. No law or court rule required the single justice to accept Matthews's negative characterizations of counsel's conduct, impose sanctions, or refer her to the Board of Bar Overseers.

The single justice acted in accordance with Mass. R. A. P. 1 (a), as appearing in 481 Mass. 1601 (2019), which requires the appellate rules to be "construed, administered, and employed to secure the just, speedy, and inexpensive determination of appeals." The rules do not require that judicial resources be spent on a full inquiry into an apparently minor and inadvertent violation of a procedural rule that caused no material prejudice to the opposing party. The single justice also acted in accordance with Mass. R. A. P. 2, as appearing in 481 Mass. 1603 (2019), which, "[i]n the interest of expediting decision, or for other good cause shown," authorizes a single justice to "suspend the requirements or provisions of any of these rules in a particular case, on such reasonable terms as . . . the single justice may order."

Conclusion. So much of the decision of the Commonwealth Employment Relations Board as affirmed the dismissal of Matthews's charge under G. L. c. 150E, § 10 (a) (1), is vacated and the matter is remanded for further proceedings consistent with our decision. The remainder of CERB's decision is affirmed. The single justice's orders of November 4 and 6,

13

2025, denying Matthews's motion for sanctions and for reconsideration thereof, are affirmed.

<u>So ordered</u>.

By the Court (Rubin, Sacks & Smyth, JJ.[7]),

Paul Little

Clerk

Entered:  July 16, 2026.

---

[7] The panelists are listed in order of seniority.

14